UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

---

In re:  UNIVERSITY HEIGHTS ASSOCIATION, INC.

CHAPTER 11
Case No. 06-10226-1

Debtor.

Hon. Robert E. Littlefield, Jr.

**AFFIDAVIT OF
DR. JEANNE H. NEFF**

---

STATE OF NEW YORK          )
                           )      ss:
COUNTY OF RENSSELAER       )

DR. JEANNE H. NEFF, being duly sworn, deposes and states as follows:

1.      I am the President of the Sage Colleges, a private institution of higher education

comprised of three colleges: Russell Sage College, Sage College of Albany, and Sage Graduate

School.

2.      Since 1996, I also have been a member of the Board of Directors of Debtor

University Heights Association, Inc. ("UHA").  During this period, I continuously have been a

member of the Executive Committee of the Board of Directors of UHA.  I also have served, at

times, as the chair of the Board of Directors of UHA, and I currently hold that position.

3.      As a result of my close involvement with UHA and its dealings with the Marty

and Dorothy Silverman Foundation (the "Silverman Foundation"),

Morris ("Marty") Silverman, and their representatives, I have personal knowledge of

the facts stated in this affidavit unless otherwise noted.

1

4.      It is my understanding that the Silverman Foundation has moved to dismiss

UHA's bankruptcy petition filed in this action.  UHA's counsel has advised me that, in order to

deny the Silverman Foundation's motion to dismiss, it is not necessary for the Bankruptcy Court

to resolve the factual issues or disputes discussed in this affidavit concerning the Silverman

Foundation's claim against the UHA or its allegations challenging certain leases between the

UHA, Albany Law School ("Albany Law"), and Albany College of Pharmacy ("Albany

Pharmacy").  Nevertheless, I believe that it is important for the Bankruptcy Court to have a more

complete understanding about the nature and activities of UHA and its relationship to the

Silverman Foundation.  Therefore, I respectfully submit this affidavit in opposition to the

Silverman Foundation's motion to dismiss.

## Formation of University Heights Association, Inc.

5.      Marty Silverman, the deceased founder and benefactor of the Marty and Dorothy

Silverman Foundation (the "Silverman Foundation"), was a native of the Capital Region in

upstate New York.

6.      Numerous not-for-profit organizations in the Albany area have been the

beneficiaries of the Silverman Foundation's support as a result of Marty Silverman's ties and

stated commitment to the Capital Region.  For example, upon information and belief, the

Silverman Foundation committed to the establishment of the "Albany Medical Center Prize in

Medicine and Biomedical Research." This $500,000.00 annual award recognizes a physician or

scientist each year whose work has lead to significant advances in the fields of health care and

scientific research with demonstrated benefits to improved patient care.  Likewise, the Silverman

Foundation reportedly gave a gift of $7,000,000.00 to Rensselaer Polytechnic Institute in Troy,

2

New York, to accelerate biotechnology research in the Capital Region. The Silverman
Foundation also has supported numerous other charitable causes in the Albany area.

7.      In furtherance of his philanthropic goals, Marty Silverman was the moving force
behind the formation of UHA, a not-for-profit corporation formed under the laws of the State of
New York in April 1995.

8.      UHA's Certificate of Incorporation states that it was organized exclusively to
support and benefit, *inter alia,* Albany Law, Albany Pharmacy, Albany Medical Center Hospital,
Albany Medical School, and The Sage Colleges (collectively referred to as the "Educational
Institutions"). The Certificate of Incorporation also provides that UHA shall administer and
receive funds, make payments to or for the use of, and provide services and facilities for the
benefit of the Educational Institutions for scientific, literary, and charitable purposes. A true and
accurate copy of UHA's Certificate of Incorporation is attached to this affidavit as Exhibit "A".

9.      Immediately following the incorporation of UHA, Marty Silverman served as a
member, director, and vice-president of UHA. Georgina Henry – an employee of the Silverman
Foundation or an entity affiliated with either the Silverman Foundation or Mr. Silverman –
served as a member, director, and secretary/treasurer of UHA during this period. Attorney
Thomas Whalen, a former mayor of the City of Albany and counsel to Marty Silverman, the
Silverman Foundation, and/or Renaissance Corporation of Albany ("RCA") (another not-for-
profit corporation under the control of Marty Silverman), was selected by Marty Silverman as a
member, director, and president of UHA and to serve as UHA's legal counsel. In October 1995,
Marty Silverman selected Attorney James Conway – his trusted advisor – to replace himself as
the third member of UHA's Board of Directors.

3

10.     Prior to and during the summer of 1996, Marty Silverman negotiated and entered into a contract with LaSalle Albany for UHA to purchase more than twenty acres of property known as the Christian Brothers Academy ("CBA") property that adjoined the Educational Institutions for the sum of $8,500,000.00. Mr. Silverman privately admitted that the deal he negotiated caused UHA to pay roughly $3,000,000.00 more than the property was worth. Nevertheless, Marty Silverman felt that the acquisition of the CBA property was necessary to enable UHA to accomplish his vision – that is, the development of a shared common area that linked and enlarged the Educational Institutions and provided new space for the development of new facilities and a central service core.

11.     During the time he finally negotiated the contract for the purchase of the CBA property, Marty Silverman sought the formal cooperation and input of the leaders of the Educational Institutions to accomplish his goals.

12.     As a result, in August 1996 UHA's bylaws were amended to change the composition of its Board of Directors from three to nine members, eight of whom would be chosen from the four Educational Institutions (two from each institution) and one of whom would be selected by Marty Silverman as the Silverman Foundation's representative on the Board.

13.     Following this change, Mr. Conway continued his service on the Board of Directors in his capacity as the Silverman Foundation's representative until his death in 1999. Shortly thereafter, Alan Goldberg, the President and Chief Executive Officer of the First Albany Companies Inc., replaced Mr. Conway as the Silverman Foundation's representative on the Board. Mr. Goldberg served on UHA's Board until December 2004. As a result, from UHA's

4

inception through December 2004, a representative of the Silverman Foundation always served

as a member of UHA's Board of Directors.

14.    During this period of time, Marty Silverman was in frequent contact with the

individual officers of UHA and the members of its Board of Directors. He also attended

meetings of UHA's Board of Directors and its Executive and Planning Committees to discuss his

and the Silverman Foundation's vision of improving the educational, cultural, and social lives of

the students attending the Educational Institutions and the possibility of opening new

opportunities for world-class doctors and scientists to help make the Capital Region the

"International Center for Health and Education."

15.    In his representations to UHA and to the community during this period, Marty

Silverman emphasized the Silverman Foundation's philanthropic goal of supporting educational

programs and a wide range of other humanitarian causes.

### Promissory Notes

16.    To further these objectives, the Silverman Foundation provided UHA with the

money UHA needed to complete the purchase of the CBA property and to purchase another piece

of property contiguous to the campuses of the Educational Institutions known as the New

Scotland Avenue Armory (hereinafter referred to as the "Funds").[1]

17.    Marty Silverman periodically requested that UHA sign certain promissory notes

purportedly obligating UHA to repay the Funds to the Silverman Foundation with interest. In

order to induce UHA to sign these promissory notes, Mr. Silverman frequently reminded

_____

[1]Marty Silverman also personally negotiated the purchase of the New Scotland Avenue
Armory property. It was purchased from the State of New York for $2,000,000.00.

members of UHA's Board of Directors of his philanthropy and charitable vision. Mr. Silverman,

Mr. Conway, and Attorney Whelan also advised members of UHA's Board that, notwithstanding

the execution of the promissory notes, UHA would not be obligated to repay the Funds or interest

on the Funds to the Silverman Foundation.

18.     For instance, one such promissory note relied on by the Silverman Foundation in

the pre-petition litigation it commenced in the New York State Supreme Court against UHA is

dated October 15, 1997, and was signed on behalf of UHA by James Barba – the President, Chief

Executive Officer, and Chairman of the Board of Directors of Albany Medical Center Hospital

and the President and Chairman of UHA's Board of Directors at that time.

19.     In an affidavit executed by Mr. Barba that was submitted to the court in

connection with that litigation, Mr. Barba testified that, shortly after the October 15, 1997

promissory note was presented to him, Marty Silverman visited him to discuss the development

of the property UHA had recently purchased.[2] Mr. Barba stated in his affidavit that he expressed

concern to Mr. Silverman about signing promissory notes that evidenced a purported debt to the

Silverman Foundation that UHA did not expect to repay. (Affidavit of James Barba ("Barba

Aff.") ¶¶ 23, 24). Mr. Barba testified that Marty Silverman responded by advising him to "stop

worrying" and that "he would take care of the debt at the right time." (Barba Aff. ¶¶ 23, 24).

20.     Similarly, in June 1998, shortly before another promissory note was presented to

Mr. Barba for his signature, Mr. Barba advised Attorney Whalen – the Silverman Foundation's,

RCA's, and UHA's counsel – that he would not sign any additional promissory notes on behalf

---

[2]A true and accurate copy of Mr. Barba's affidavit that was filed with the court is attached
to this affidavit as Exhibit "B".

of UHA without a firm indication from Marty Silverman that UHA would be relieved of the debt

represented by the notes. (Barba Aff. ¶ 25). Shortly thereafter, Attorney Whalen advised Mr.

Barba that he had spoken to Marty Silverman and that Mr. Silverman had stated that he would

forgive any indebtedness at the appropriate time. Attorney Whalen also advised Mr. Barba that

Marty Silverman was angry that Mr. Barba had raised this issue again since Mr. Silverman

previously had discussed it with Mr. Barba. (Barba Aff. ¶ 26). A few weeks later, Marty

Silverman met with Mr. Barba and advised him that Attorney Whalen had raised Mr. Barba's

concerns with him. During that meeting, Marty Silverman once again advised Mr. Barba to

"calm down" and that the debt would be taken care of "either before or after I die." (Barba Aff. ¶

26)

21.    Mr. Barba also testified in his affidavit that in the fall of 2000 he raised this issue

again with Marty Silverman. (Barba Aff. ¶ 27). Marty Silverman responded by asking Mr. Barba

why he doubted him since he had, after all, "kept all of [his] promises to Albany Medical Center"

in the past. (Barba Aff. ¶ 28). Marty Silverman once again assured Mr. Barba that the debt

would be taken care of by the Silverman Foundation. (Barba Aff. ¶ 28).

22.    The Silverman Foundation's representations in this regard also were directed to

other members of UHA's Board of Directors, including Al Collins – a member of the Board of

Trustees of Albany Pharmacy who also has been a member of the Board of Directors of UHA

since 1996.

23.    In an affidavit that was submitted to the state court in connection with the

Silverman Foundation's litigation, Mr. Collins testified that, both before and after he became a

member of UHA's Board of Directors in 1996, Marty Silverman and Mr. Conway had numerous

7

discussions with him and other Board members regarding UHA. (Affidavit of Alfred J. Collins, Jr. ("Collins Aff.") ¶ 15).[3]  Whenever the promissory notes were discussed during these conversations (whether during meetings of UHA's Board of Directors or at other times), Mr. Conway always advised Mr. Collins and the other officers and directors of UHA who were present that, notwithstanding the execution of the promissory notes, UHA did not need to worry about repaying any obligation evidenced by the promissory notes because the Silverman Foundation was "never going to require UHA to repay any notes." (Collins Aff. ¶¶ 17, 18).  Mr. Collins testified that Marty Silverman confirmed these representations by always reiterating his philanthropy and charitable vision for UHA.  Mr. Collins also testified that whenever the Board of Directors of UHA raised a concern regarding this issue, Marty Silverman also would advise the Board not to worry about the notes, thereby confirming the Board's understanding that any amounts evidenced by the notes would not have to be repaid. (Collins Aff. ¶¶ 17, 18).

24.     Like James Barba and Al Collins, I also met frequently with Marty Silverman, Mr. Conway, and Attorney Whalen to discuss Marty Silverman's vision for UHA.  Contemporaneous with the execution of promissory notes that were presented to UHA, Mr. Conway and/or Attorney Whalen – in their capacities as representatives of Marty Silverman and/or the Silverman Foundation – individually and collectively represented to me that it was and always had been Marty Silverman's intention that UHA would not be responsible for repaying the promissory notes.  It also was represented to me by these individuals that this "forgiveness" would serve as Marty Silverman's "charitable legacy" to the community.

---

[3]A true and accurate copy of Mr. Collins' affidavit that was filed with the court is attached to this affidavit as Exhibit "C".

25.     Marty Silverman and the other representatives of the Silverman Foundation made

these representations and promises to the other members of the Board of Directors of UHA and

to me to secure the cooperation and assistance of UHA and the leaders of the Educational

Institutions in furthering Marty Silverman's vision for UHA's property, and to induce UHA to

sign the promissory notes. In reliance on the Silverman Foundation's assurances and promises,

UHA signed promissory notes that the Silverman Foundation is now relying on to support its

claims in the state court action.

### Albany IDA Bond Financing, Law School Lease, and Pharmacy School Lease

26.     In furtherance of the vision shared by the Silverman Foundation and UHA with

respect to the development of the CBA property and in reliance on the representations and

promises made by the Silverman Foundation as set forth above, in 1999 UHA decided to (i)

demolish several buildings located on the former CBA property, (ii) design and construct a new

academic building on two acres of the former CBA property to be leased to Albany Law, (iii)

design and renovate a building located on the former CBA property into an academic building to

be leased to Albany Pharmacy, and (iv) install new sidewalks, roads, water and sewer lines,

retention basin, and storm water drainage system, all servicing and benefitting the entire 31-acre

parcel owned by UHA (the "Site Work").

27.     These initiatives were financed through the issuance of industrial development

bonds in the aggregate amount of $14,910,000.00 by the City of Albany Industrial Development

Agency ("Albany IDA") based on the strength of the credit of Albany Law and Albany Pharmacy

(the "Bond Financing"). A true and accurate copy of the Installment Sale Agreement dated as of

December 1, 1999, between Albany IDA and UHA with respect to this bond financing is attached

to this affidavit as Exhibit "D".

28.    In connection with the Bond Financing, UHA constructed an approximately

44,785 square foot building (approximately 37,000 square feet of which is above grade, with

mechanical equipment and storage located in a 7,785 square foot basement) on approximately

two acres of the CBA property (the "Law School Lease Premises") and leased the Law School

Lease Premises to Albany Law in December 1999 (the "Law School Lease"). Since that time,

Albany Law has used the Law School Lease Premises for academic classrooms and

administrative and faculty offices. A true and accurate copy of the Law School Lease is attached

to this affidavit as Exhibit "E".

29.    Pursuant to the Law School Lease, Albany Law is obligated to pay UHA a

minimum rent during the initial thirty year term of the Law School Lease in the amount equal to

the debt service payments due under Series A Civic Facility Industrial Development Revenue

Bonds issued by the Albany IDA in the amount of $8,745,000.00 (the "Series A Bonds"), the

proceeds of which were used to pay for the construction of the Albany Law academic building

and approximately $1,100,000.00 of the Site Work. UHA has assigned the Law School Lease to

the bond trustee for the holders of the Series A Bonds.

30.    UHA has filed a motion with this Court requesting approval of UHA's business

decision to assume the Law School Lease and to convey the Law School Lease Premises to

Albany Law. UHA's motion and my affidavit filed with this Court in support of that motion are

incorporated by reference as if annexed hereto and fully set forth herein. As more fully set forth

in the papers filed with the Court with respect to that motion, UHA will benefit from this

assumption and sale by obtaining an immediate payment of cash which it can use to fund a plan

of reorganization to pay its creditors.

31.     In connection with the Bond Financing, UHA also renovated the old CBA High

School, an approximately 39,902 square foot building, located on approximately two acres of the

CBA Property (the "Pharmacy Classroom Lease Premises") and leased the Pharmacy Classroom

Lease Premises to Albany Pharmacy in December 1999 (the "Pharmacy School Lease").  Albany

Pharmacy uses the Pharmacy Classroom Lease Premises for academic classrooms and

administrative and faculty offices.  A true and accurate copy of the Pharmacy School Lease is

attached to this affidavit as Exhibit "F".

32.     Pursuant to the Pharmacy School Lease, Albany Pharmacy is obligated to pay

UHA a minimum rent during the initial thirty year term of the Pharmacy School Lease in the

amount equal to the debt service payments due under Series B Civic Facility Industrial

Development Revenue Bonds issued by the Albany IDA in the amount of $6,165,000.00 (the

"Series B Bonds"), the proceeds of which were used to pay for the renovation of the Albany

Pharmacy academic building and approximately $800,000.00 of the Site Work.  (The Series A

Bonds referenced above and the Series B Bonds are collectively referred to as the "Revenue

Bonds").  UHA assigned the Pharmacy School Lease to the bond trustee for the holders of the

Series B Bonds.  Albany Pharmacy has defeased the Series B bonds by delivering $6,164,697.45

worth of government securities to the bond trustee in an amount sufficient to pay all of the

obligations to the bond holders.  In essence, Albany Pharmacy has prepaid its rent.

33.     UHA has filed a motion with this Court requesting approval of UHA's business

decision to assume the Pharmacy School Lease and to convey the Pharmacy Classroom Lease

Premises to Albany Pharmacy.  UHA's motion and my affidavit filed with this Court in support

11

of that motion are incorporated by reference as if annexed hereto and fully set forth herein. As more fully set forth in the papers filed with the Court with respect to that motion, UHA will benefit from this assumption and sale by obtaining an immediate payment of cash which it can use to fund a plan of reorganization to pay its creditors.[4]

34.     Marty Silverman and Alan Goldberg – the Silverman Foundation's representative on UHA's Board of Directors – attended a meeting of UHA's Board of Directors held on October 6, 1999, at which the Board adopted a resolution approving the Law School Lease and the Pharmacy School Lease. A true and accurate copy of the minutes and resolutions of the Board approving the Law School Lease and the Pharmacy School Lease is attached to this affidavit as Exhibit "G".

35.     Neither Marty Silverman nor Alan Goldberg objected to the terms and conditions of the Law School Lease or the Pharmacy School Lease at that time. Instead, Alan Goldberg voted in favor of the Board's October 6, 1999 resolution.

**Supreme Court's Authorization of the Leases**

36.     On or about November 12, 1999, UHA filed a Verified Petition with the New York Supreme Court, Albany County, seeking the Court's approval of the Leases pursuant to Sections 510 and 511 of New York's Not-for-Profit Corporation Law. A true and accurate copy of the Verified Petition is attached to affidavit as Exhibit "H".

37.     A copy of the Petition was served on the Attorney General of the State of New

---

[4]UHA also has received an offer from Albany Pharmacy to purchase an additional parcel of property subject to another lease for $1,440,000. UHA has not responded to this offer because it needs to have its appraiser determine the value of that parcel of property. If UHA decides to sell this parcel, then the sale would generate additional cash for a plan of reorganization.

York (the "Attorney General"). UHA's 1998 financial statements also were provided to the Attorney General.

38.    In the Petition, UHA stated that it intended to construct and/or renovate the classroom and office buildings on the former CBA property and lease the land and buildings to Albany Law and Albany Pharmacy. UHA also stated that the Revenue Bonds would be issued by the City of Albany Industrial Development Agency to finance (i) the demolition of several buildings located on the former CBA property, (ii) the design and construction of a new academic building on two acres of the former CBA property to be leased to Albany Law, and (iii) the design and renovation of a building located on the former CBA property to be leased to Albany Pharmacy.

39.    In the Petition, UHA also stated that UHA proposed to enter into separate leases with Albany Law and Albany Pharmacy to meet its payment obligations under the Revenue Bonds. The terms and conditions of the Law School Lease and the Pharmacy School Lease were described in detail in the Petition, including the fact that the term of both leases would be thirty (30) years with an option by the tenant to renew the lease for two (2) additional thirty (30) year terms.

40.    The Petition also stated that the fixed minimum annual rent due during the initial 30-year term of the leases would be equal to UHA's debt service payment obligations due under the Revenue Bonds. The Petition stated that the lease payments received by UHA would be applied toward UHA's debt service payment obligation under the Revenue Bonds.

41.    The Attorney General reviewed the Petition, the terms and conditions of the Law School Lease and the Pharmacy School Lease, and UHA's financial statements. After this

review, the Attorney General expressed no opposition to UHA's execution of the Leases.

42.     By an order dated November 12, 1999[5] and pursuant to Section 511(d) of New

York's Not-For-Profit Corporation Law, the New York Supreme Court, Albany County (the

"Court") found that the consideration and the terms and conditions of the Leases were fair and

reasonable to UHA and that the Leases furthered the purposes and objectives of UHA.

Accordingly, the Court (i) granted UHA the relief requested in the Petition, (ii) authorized UHA

to execute the Leases in accordance with the terms set forth in the Petition, and (iii) ordered that

the proceeds of the Leases may be applied toward the payment of the debt service of UHA under

the Revenue Bonds (the "Court Order"). A true and accurate copy of the Court's order is

attached to this affidavit as Exhibit "I".

## The Silverman Foundation's Lawsuits against UHA

43.     Despite the development of the UHA property in furtherance of Marty

Silverman's vision, Mr. Silverman became disenchanted with and adversarial to UHA for

reasons that are not entirely apparent to UHA. As a result, notwithstanding the promises set forth

above, the Silverman Foundation claimed that UHA was in default of its alleged obligations

under the promissory notes.

44.     In September 2005, the Silverman Foundation commenced an action in the New

York State Supreme Court, New York County against UHA claiming that UHA owed it

$14,825,000.00 in unpaid principal and at least $10,037,568.75 in unpaid interest on fifteen

promissory notes signed by UHA during the period from June 1996 through July 2001. At the

---

[5]The return date of the Petition was November 22, 1999. It is believed that the November 12,
1999 date identified on the order represents a clerical error, and that the order was entered on November
22, 1999.

same time, the Silverman Foundation commenced a separate action in the New York State

Supreme Court, New York County against UHA, Albany Law, and Albany Pharmacy seeking to

set aside the Law School Lease and the Pharmacy School Lease as fraudulent conveyances. Both

of these lawsuits, which are discussed more fully in the affidavit of Patrick Fitzgerald, Esq., were

pending at the time that UHA filed its Chapter 11 petition in the Bankruptcy Court.

### UHA's Operations and Business Activities

45.     Against this background, UHA has flourished since its organization in 1996.

UHA now provides the Educational Institutions and others with a shared campus of

approximately 31 acres of property on New Scotland Avenue in the City of Albany (the "UHA

Campus"). There are six buildings and a 600- car parking garage located on the UHA Campus,

with a seventh building under construction. There also are approximately 600 surface parking

spaces located on the UHA Campus.

46.     The development of the UHA Campus and the consortium concept is a result of

an extensive and lengthy planning effort. In its early history, the Board of Directors of UHA

and/or its Executive Committee met monthly to plan the future activities of UHA and the

development of the UHA Campus. The Board of Directors also established a Planning

Committee that met even more frequently to study these issues.

47.     Early in 1997, UHA secured a planning grant from the Empire State Development

Corporation in the amount of $100,000. Each of the Educational Institutions agreed to provide

$25,000 in required matching funds. UHA issued a Request for Proposals and selected Einhorn

Yaffee and Prescott PC ("EYP") to assist UHA in developing plans for the UHA Campus. EYP

provided a team of architects, financial planners and historic experts to assist UHA in planning

for the development of the UHA Campus.

48.     In the Spring of 1998, the Sage Colleges obtained a three-year grant from the

Teagle Foundation of New York in the amount of $295,000 on behalf of UHA (the "Teagle

Grant"), for further development of the UHA consortium concept.  Each of the Educational

Institutions provided $25,000 in required matching funds to UHA in each of the three-year grant

period.  The Teagle Grant supported the establishment of UHA's operating infrastructure (first

employees, office furnishings, computers, etc.).

49.     The Teagle Grant also provided for the consulting services of the Medical

Academic Scientific Community Organization , Inc.("MASCO"), a not-for- profit consortium

operating in the Longwood area of Boston.  MASCO assisted UHA in identifying potential for

UHA to create and implement shared service programs that could support basic programs and

further UHA's charitable purposes.

50.     With the assistance of EYP and MASCO, the Board of Directors of UHA adopted

a Master Plan, including financial pro formas, that was consistent with the vision of Marty

Silverman for the development of a shared common area that linked and enlarged the

Educational Institutions and provided new space for the development of new facilities and a

central service core.  The Board of Directors then set out to fulfill the Master Plan and the vision

of Marty Silverman.

51.     In addition to the Law School Lease and the Pharmacy School Lease, UHA has

entered into a number of lease transactions since 1999 that are consistent with UHA's Master

Plan and that further both the vision of Marty Silverman and the charitable purposes set forth in

UHA's certificate of incorporation.

52.     In furtherance of the Master Plan and in accord with its charitable purpose, UHA
entered into a lease dated February 8, 2002 (the "CLF Lease") with Charitable Leadership
Foundation ("CLF") whereby UHA leased approximately four acres of land to CLF ("CLF Lease
Premises"). CLF constructed a medical research facility known as the Center for Medical
Sciences and a six hundred (600) car parking garage on the CLF Lease Premises. In addition to
CLF researchers, the medical research facility houses researchers from Wadsworth Center of the
New York State Health Department (that also has a facility adjacent to the UHA Campus),
Albany Pharmacy and the Medical Center.

53.     In furtherance of the Master Plan and in accord with its charitable purpose, UHA
entered into a lease dated June 15, 2004 with RCA – an affiliate of the Silverman Foundation as
set forth above – whereby UHA leased approximately four acres of land to RCA (the "RCA
Lease"). A true and accurate copy of the RCA Lease is attached hereto as Exhibit "J". RCA
constructed a student housing facility on the premises that currently houses more than four
hundred (400) students of the Educational Institutions.

54.     Pursuant to a Payment Agreement among UHA, RCA, and the Silverman
Foundation, the rental payments due from RCA to UHA under the RCA Lease – which are based
on yearly net revenues generated by the student housing facility plus interest – are to be paid
directly to the Silverman Foundation in satisfaction of obligations, if any, owed to the Silverman
Foundation. Based on occupancy rates and projected budgets for the student housing facility,
UHA believes that net revenues were generated by the facility for RCA's fiscal year ending
December 31, 2005. However, neither RCA nor the Silverman Foundation has advised UHA of
what payments, if any, have been made by RCA to the Silverman Foundation pursuant to the

17

RCA Lease and the Payment Agreement.[6]  A true and accurate copy of the Payment Agreement is attached hereto as Exhibit "K".

55.     In furtherance of the Master Plan and in accord with its charitable purpose, UHA entered into a lease dated June 15, 2004 (the "Student Center Lease") with Albany Pharmacy whereby UHA leased approximately two acres of land to Albany Pharmacy (the "Student Center Lease Premises").  Albany Pharmacy is in the process of constructing an approximately 34,490 square foot student center on the Student Center Lease Premises.  The student center is expected to be completed in June 2006, and will include a joint book store and a shared dining facility for use by Albany Pharmacy, Albany Law, and Sage students, staff, and faculty.

56.     UHA has filed a motion with this Court requesting approval of UHA's business decision to assume the Student Center Lease and to convey the Student Center Lease Premises to Albany Pharmacy.  UHA's motion and my affidavit filed with this Court in support of that motion are incorporated by reference as if annexed hereto and fully set forth herein.  As more fully set forth in the papers filed with the Court with respect to that motion, UHA will benefit from this assumption and sale by obtaining an immediate payment of cash which it can use to fund a plan of reorganization to pay its creditors.

57.     The UHA Campus also includes the historic New Scotland Avenue Armory, which was built in 1914 and is listed on the National Historic Register (the "Armory").  The Armory houses the administrative offices for UHA, RCA and the Hudson Mohawk Association

---

[6]RCA has advised UHA that no net revenues were generated by the student housing facility for RCA's fiscal year ending December 31, 2004, but it has failed to provide UHA with any supporting financial documentation to support this claim.  In accordance with its rights under the RCA lease, UHA has requested financial information from RCA to verify the net revenues for the 2004 fiscal year.  As of this date, RCA has not provided that information to UHA.

of Colleges and Universities. UHA also has allowed the Armory to be used by the City of

Albany Police and Fire Departments  for training and by Albany Pharmacy for athletic programs.

UHA was in the process of implementing plans for the possible adaptive re-use of the Armory as

a conference center/hotel, but those plans were halted when the relationship with Marty

Silverman and the Silverman Foundation became strained.

      58.     In accordance with its charitable purpose, UHA maintains the UHA Campus and

provides ground maintenance services for Albany Law, Albany Pharmacy, and RCA on a fee for

service basis.  These services include: maintaining signage on roadways and parking lots,

maintaining campus lighting, maintaining landscaping structures, including fencing and retaining

walls, and maintaining and monitoring the UHA Campus drainage system and making

improvements when necessary.  During the spring and summer, these services include: lawn

cutting and maintenance, including the application of fertilizer and pesticide treatments, shrub

trimming, weeding and cleanup, including emptying waste containers, designing and plating of

flowers, mulching of flower beds, replenishing and maintaining nursery stock area for

replacement plantings, and designing, planting and maintaining landscaping in problem areas.

During the fall and winter, the maintenance services include: leaf collection, snow and ice

removal from sidewalks and select parking lots and the UHA portion of the CLF Parking Garage.

      59.     In accordance with its charitable purpose, UHA provides security services to the

UHA Campus and provides security services for Albany Law, Albany Pharmacy, the Albany

campus of the Sage Colleges, and RCA on a fee for service basis.  Uniformed, appropriately

qualified security personnel provide radio-dispatched patrol of grounds, including building

exteriors, building interiors, parking lots, and green spaces. The objective of the security officer

patrols is to identify, report, and address hazardous situations, suspicious persons and situations, unusual building conditions, and other conditions which may represent a threat to persons or property. Safety officers patrol the exterior premises, grounds and parking lots on foot, bicycle and vehicle. Safety officers also patrol the interior of occupied non-residence buildings every three hours and the interior of occupied residence halls every 2-3 hours. Public safety officers note and report maintenance or equipment failures or malfunctions, alarms, CCTV systems, and door access systems. Public safety officers provide traffic assistance and direction, and issue tickets to violators of parking rules. Public safety officers also are responsible for coordinating communications with the Albany Fire Department and police agencies as warranted. Public safety officers provide crime prevention awareness and training, crisis management liaison with public sector public safety agencies, conduct student orientation and employee seminars and participate in the internal safety and security committee.

60.     UHA also serves as a vehicle for collaboration among the Educational Institutions to sponsor joint symposia, joint degree programs and joint research projects.

61.     In accordance with its charitable purpose, UHA and the Educational Institutions, acting through UHA's Information Technology Committee, developed a shared fiberoptic network. UHA also provided information technology consulting services to the Educational Institutions.

62.     UHA, acting through its Campus Life and Student Affairs Committee, facilitates use of the Pharmacy School's gymnasium and UHA's track and playing field. The Committee also sponsors an annual fall neighborhood fair to introduce students from the Educational Institutions to area businesses.

63.    UHA, acting through its Human Resources/Personnel Committee, sponsors annual orientations for the new faculty of the Educational Institutions. In addition, the Committee has sponsored seminars for employees of the Educational Institutions on retirement planning and caring for aging parents.

64.    UHA, acting through its Grants Committee, has worked on obtaining grants for outdoor sculptures for the UHA Campus and potential energy projects.

65.    Today UHA employs approximately thirty-five employees, including an Executive Director, thirty-two public safety officers, and two grounds maintenance workers.

66.    Finally, during the Section 341 hearing before the United States Trustee, I recall that Peter Hughes, Executive Director of UHA, indicated that UHA operated on a break-even basis. However, Mr. Hughes did not include in his calculations the rent received from CLF pursuant to the CLF Lease in the amount of $150,000.00 per year and the rent received from Albany Pharmacy pursuant to the Student Center Lease in the amount of $51,735.00 per year. As a result, UHA currently has a positive cash flow.

_Jeanne H. Neff_
Dr. Joanne H. Neff

Sworn to before me this
23rd day of March 2006.

_____
Notary Public

PATRICK J. FITZGERALD III
Notary Public, State Of New York
No. 02FI6078000
Qualified In Albany County
Commission Expires 07/22/20 06

21