UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------------

IN RE:                                              Chapter 11
                                                    Case No.: 06-10226-1

    UNIVERSITY HEIGHTS ASSOCIATION,

                             Debtor.

-----------------------------------------------------------------------------


## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY

McNAMEE, LOCHNER, TITUS
& WILLIAMS, P.C.
*Attorneys for the Debtor*
677 Broadway
Albany, New York 12207
(518) 447-3200
Francis J. Smith, Esq., of Counsel
Peter A. Pastore, Esq., of Counsel

GIRVIN & FERLAZZO, P.C.
*Special Counsel to the Debtor*
20 Corporate Woods Boulevard
Albany, New York 12211
Patrick J. Fitzgerald, Esq., of Counsel
M. Cornelia Cahill, Esq., of Counsel

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    The Creation of the Debtor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    The Promissory Notes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    The Debtor's Reliance on the Silverman Foundation's Promises . . . . . . . . . . . . . . 6

    The Silverman Foundation's Lawsuits against The Debtor . . . . . . . . . . . . . . . . . 8

    The Bankruptcy Filing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I.    THERE IS NO BASIS TO DISMISS THE PETITION
    AS A BAD FAITH FILING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    A.    The "Facts" Relied on by the Silverman Foundation are Incorrect . . . . . . . . . . . 11

    B.    The Debtor Did Not File Bankruptcy to Gain
        a Tactical Advantage in a Two-party Dispute . . . . . . . . . . . . . . . . . . . . . . 14

        (1)    This Is Not a Two-Party Dispute . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        (2)    This Case Was Not Filed as a Litigation Tactic to
               Frustrate the Silverman Foundation's State Court
               Action to Collect on the Promissory Notes . . . . . . . . . . . . . . . . . . 17

        (3)    This Is a Proper Case for a Bankruptcy Filing . . . . . . . . . . . . . . . . 19

    C.    The Debtor Has a Realistic Means of Reorganizing . . . . . . . . . . . . . . . . . . 20

    D.    The Relief the Debtor Seeks Is Available in Bankruptcy
        Court and Cannot Be Obtain in State Court . . . . . . . . . . . . . . . . . . . . . . . . 21

i

E.    The Cases Relied on by the Silverman Foundation Are Not on Point . . . . . . . . 23

II.    THE SILVERMAN FOUNDATION IS NOT ENTITLED
TO RELIEF FROM THE AUTOMATIC STAY  . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

(1)    Relief Would Not Result in a Partial or Complete
Resolution of the Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

(2)    The State Court Action Is Connected With and Will
Interfere With This Bankruptcy Case . . . . . . . . . . . . . . . . . . . . . . . . . . 31

(3)    The Interests of Judicial Economy and the Expeditious and
Economical Resolution of Litigation Will Not Be Served By
Permitting the State Court Litigation To Continue  . . . . . . . . . . . . . . . 32

(4)    A Specialized Tribunal With the Necessary Expertise Has
Not Been Established to Hear the Cause of Action . . . . . . . . . . . . . . . . 32

(5)    The Litigation In State Court Would Prejudice the Interests
of Other Creditors  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

(6)    The Silverman Foundation's Success In the State Court Action
Would Result in a Judicial Lien Avoidable By the Debtor  . . . . . . . . . . 33

(7)    The Parties Are Not Ready For Trial In the State Court Action  . . . . . . 34

(8)    The Impact Of the Stay On the Parties and the Balancing of
Harms Militates In Favor Of Denial Of The Motion . . . . . . . . . . . . . . . 34

(9)    Any Judgment Obtained By the Silverman Foundation Would
Be Subject To Equitable Subordination . . . . . . . . . . . . . . . . . . . . . . . . 35

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

## TABLE OF AUTHORITIES

*Cases*

Bittner v. Borne Chem. Co., 691 F.2d 134 (3d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

The Bridge to Life, Inc., 330 B.R. 351 (Bankr. E.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . 25

Matter of Cohoes Ind. Terminal, 931 F.2d 222 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . 2, 17

In re CLC of America, 68 B.R. 512 (Bankr. E.D. Mo. 1986) . . . . . . . . . . . . . 22, 31, 32, 33, 35

C-TC 9th Ave. Partnership, 193 B.R 650 (Bankr. N.D.N.Y. 1995), affd.
113 F.3d 1304 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10, 11, 23

In Deep, 279 B.R. 653 (Bankr. N.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 32, 33

Fraternal Composite Servs., 315 B.R. 253 (N.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 24

In re HBA East, 87 B.R. 248 (Bankr. E.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Little Creek Dev. Co., 779 F.2d 1068 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Macinnis, 235 B.R. 255 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

In re Mazzeo, 167 F.3d 139 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

In re Northtown Realty Co., 215 B.R. 906 (Bankr. E.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . 27

Schur Management Company, 323 B.R. 123 (Bankr. S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . 27

In re Sonnax Ind., 907 F.2d 1280 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 28, 29

*Statutes*

11 U.S.C. § 101(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

11 U.S.C. §101(31)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

11 U.S.C. § 362(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10, 28

11 U.S.C. §365 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

11 U.S.C. § 502(c) ........................................................ 30

11 U.S.C. § 510(c) ........................................................ 30

11 U.S.C. § 1112(b) ................................................. 1, 3, 4, 9

N.Y. Civil Prac. Law and Rules 3213 ...................................... 13

N.Y. Civil Prac. Law and Rules 5018(a) .................................. 34

N.Y. Civil Prac. Law and Rules 5203(a) .................................. 34

N.Y. Not-For-Profit Corporation Law § 511 ............................... 47

University Heights Association, Inc., debtor in this chapter 11 case (the "Debtor") submits this memorandum of law in opposition to a motion by Marty and Dorothy Silverman Foundation (the "Silverman Foundation") pursuant to 11 U.S.C. § 1112(b) to dismiss the petition or, in the alternative, for relief from the automatic stay pursuant to 11 U.S.C. § 362(b).

## PRELIMINARY STATEMENT

Contrary to the allegations of the Silverman Foundation, the instant case has none of the hallmarks of a bad-faith filing. The majority of the "facts" alleged in the Silverman Foundation's motion papers are conclusory allegations with no evidentiary support.

The petition was not filed as a litigation tactic in a state court action; moreover, the state court was not expected to rule on that litigation in a matter of days. Rather, that litigation was commenced by the Silverman Foundation against the Debtor in September of 2005 and was far from being concluded when the bankruptcy petition was filed.

The Debtor is not a single asset entity and, although it is a not-for-profit corporation, it is not a shell or conduit as alleged by the Silverman Foundation. It operates a business and has significant assets which it can use to reorganize.

This is not merely a dispute between the Debtor and the Silverman Foundation. There are a number of parties who are owed significant sums of money; some of them are secured and most, like the Silverman Foundation, are unsecured. The indebtedness owed to the various parties is affected by the actions of the Silverman Foundation and the Debtor cannot pay its primary secured creditor and equitably pay all of its unsecured creditors if one unsecured creditor is permitted to prevent the Debtor from exercising its rights under the Bankruptcy Code. Specifically, the Debtor owes in excess of $8 million on a secured claim to the trustee for the holders of the industrial revenue bonds which were used to finance the construction of a building on the Debtor's property.

1

Albany Law School is owed in excess of $2.1 million, Albany College of Pharmacy is owed in excess of $1.5 million, the Sage Colleges is owed in excess of $60,000 and Albany Medical Center is owed in excess $40,000. All of those unsecured obligations are now in default. Even assuming for the purposes of this motion that the Debtor owes the Silverman Foundation $22 million as it claims[1] and, assuming further, that its claim is not subject to equitable subordination, the Debtor does not have sufficient unencumbered assets to pay all of those claims. Without a bankruptcy filing, it would be a race to the courthouse among these unsecured creditors to go after the Debtor's limited assets. The purpose of the Bankruptcy Code is to provide a debtor with breathing space to come up with an orderly plan for equitably paying unsecured creditors in a fair and reasonable manner. See, Matter of Cohoes Ind. Terminal, 931 F.2d 222, 228 (2d Cir. 1991). Thus, this case is a classic case for a bankruptcy filing.

The legal analysis of the Silverman Foundation consists of one or two facts cherry picked from cases where bankruptcy petitions were dismissed. The Silverman Foundation ignored the other facts in those cases which distinguish them from the instant case. This is particularly true of the Silverman Foundation's reliance on this Court's decision in C-TC 9th Ave. Partnership, 193 B.R 650 (Bankr. N.D.N.Y. 1995), affd. 113 F.3d 1304 (2d Cir. 1997), which, upon careful reading, is nothing like the instant case. Perhaps the most important distinguishing factor is that, in C-TC 9th Ave. Partnership and the other cases relied on by the Silverman Foundation, the moving party was a secured creditor who was pursuing its state law rights to its collateral, which rights were superior to those of unsecured creditors. In the instant case, the Silverman Foundation is merely an unsecured creditor who has no better right to the Debtor's unencumbered assets than any of the

---

[1]The alleged claim of the Silverman Foundation consists of principal in the amount of $10.5 million and the balance is interest.

2

Debtor's other unsecured creditors.

## STATEMENT OF FACTS

### Introduction

The facts necessary to resolve this motion are established by the affidavits of Dr. Jeanne H. Neff, Patrick J. Fitzgerald, Esq., and M. Cornelia Cahill, Esq., submitted herewith together with the exhibits annexed thereto and the Debtor's petition, schedules, statement of financial affairs and other filing documents which are incorporated herein.

Initially, there are allegations made in the Silverman Foundation's motion papers concerning its claim and certain leases between the Debtor and two of the educational institutions which the Debtor vigorously disputes. These issues do not need to be resolved on this motion.

Namely, the Silverman Foundation claims to be owed $22 million (only $10.5 million of which consists of principal). The Debtor disputes that it owes any money to the Silverman Foundation and, even if a debt is owed, the Debtor disputes the calculation of the Silverman Foundation. Although questions of fact exist regarding what, if any, indebtedness the Debtor owes to the Silverman Foundation and whether the claim, if it exists at all, is subject to equitable subordination, these questions of facts need not be resolved for the purposes of this motion. Even assuming that the Silverman Foundation is owed $22 million, the criteria for bad faith dismissal under 11 U.S.C. § 1112(b) do not exist for the reasons set forth below.

The Silverman Foundation claims that two leases pursuant to which the Debtor leases real property to Albany Law School and Albany College of Pharmacy contain below market or "sweetheart" rents. The Debtor strongly denies this allegation for a number of reasons, not the least of which are that (1) both leases were unanimously approved by the Debtor's board of directors, which included a representative of the Silverman Foundation, at a Board meeting attended by Marty

3

Silverman and (2) both leases were approved by an order of a Justice of New York Supreme Court pursuant to section 511 of the New York Not-For-Profit Corporation Law.[2] This Court does not need to rule on this issue for the purpose of this motion because the criteria for bad faith dismissal under 11 U.S.C. § 1112(b) do not exist regardless of how this issue is resolved.

Although the Court does not need to rule on the validity of the Silverman Foundation's claim at this time, it is important that the Court understand the relationship among the Debtor and the educational institutions as well as the IDA bond transaction which financed the acquisition by the Debtor of its assets. The affidavit of Dr. Jeanne H. Neff, President of the Sage Colleges and Chairperson of the Board of Directors of the Debtor (the "Board") submitted herewith sets forth in detail the history of the relationship among the parties and the financing structure which is in place.

### The Creation of the Debtor

Marty Silverman, the deceased founder and benefactor of the Silverman Foundation, was the moving force behind the formation of the Debtor, a not-for-profit corporation formed in April 1995. Pursuant to its certificate of incorporation, the Debtor is organized to operate exclusively for the support and benefit of Albany Law School, Albany Medical School, Albany Medical Center Hospital, Albany College of Pharmacy, The Sage Colleges, The Veterans Administration Medical Center Hospital, Parsons Child and Family Center and The Capital District Psychiatric Center (Exhibit "A").[3] The Certificate of Incorporation also provides that the Debtor shall administer and receive funds, make payments to or for the use of, and provide services and facilities for the benefit

---

[2] Section 511 of the New York Not-For-Profit Corporation Law provides a procedure whereby a not-for-profit corporation may petition for court approval of a lease or other disposition of its assets upon a showing that the terms of the transaction are fair and reasonable to the corporation and that the purposes of the corporation will be promoted by the transaction.

[3] Exhibit references are to exhibits appended to the affidavit of Dr. Jeanne H. Neff.

4

of the Educational Institutions for scientific, literary, and charitable purposes (Exhibit "A").

After he incorporated the Debtor, Marty Silverman served as its member, director, and vice-president and he personally selected the two other members of the Board. Thus, Marty Silverman created the Debtor and was in control of the Debtor until August 1996.

Prior to and during the summer of 1996, Marty Silverman negotiated and entered into a contract to purchase more than 20 acres of property known as the Christian Brothers Academy ("CBA") property that adjoined Albany Law School, Albany College of Pharmacy, Albany Medical Center and the Sage Colleges (the "Educational Institutions") for the sum of $8,500,000.[4] Marty Silverman also personally negotiated the purchase of the New Scotland Avenue Armory property from the State of New York for $2,000,000. Mr. Silverman felt that the acquisition of the property was necessary to enable the Debtor to accomplish his vision, i.e., the development of a shared common area that linked and enlarged the Educational Institutions and provided new space for the development of new facilities and a central service core.

After he finally negotiated the contract for the purchase of the land, Marty Silverman sought the formal cooperation and input of the leaders of the Educational Institutions to accomplish his goals. As a result, in August 1996 the Debtor's bylaws were amended to change the composition of the Board from the three members chosen by Mr. Silverman to nine members, eight of whom would be chosen from the Educational Institutions (two from each institution) and one of whom would be selected by Mr. Silverman as the Silverman Foundation's representative on the Board. James Conway continued as the Silverman Foundation's representative on the Board until his death in 1999. Alan Goldberg replaced Mr. Conway as the Silverman Foundation's representative on the

---

[4]Mr. Silverman privately admitted that the deal he negotiated caused the Debtor to pay roughly $3,000,000 more than the property was worth.

5

Board and served until December 2004. Thus, from the Debtor's inception through December 2004, a representative of the Silverman Foundation always served as a member of the Board.

### The Promissory Notes

The Silverman Foundation provided the $10.5 million needed to purchase the CBA property and the New Scotland Avenue Armory (the "Funds"). As discussed in detail in the affidavit of Dr. Neff, Marty Silverman periodically requested that the Debtor sign promissory notes purportedly obligating the Debtor to repay the Funds to the Silverman Foundation with interest, but Mr. Silverman and other representatives of the Silverman Foundation also advised members of the Board that, notwithstanding the execution of the promissory notes, the Debtor would not be obligated to repay the Funds or interest thereon.

### The Debtor's Reliance on the Silverman Foundation's Promises

In reliance on the Silverman Foundation's assurances and promises, the Debtor not only signed the promissory notes, but, in 1999, borrowed $15 million from a third party to (i) demolish several buildings located on the former CBA property, (ii) design and construct a new academic building on two acres of the former CBA property to be leased to Albany Law School, (iii) design and renovate a building located on the former CBA property into a new academic building to be leased to Albany College of Pharmacy, and (iv) install new sidewalks, roads, water and sewer lines, retention basin, and storm water drainage system, all servicing and benefitting the entire 31-acre parcel owned by the Debtor. These initiatives were financed through industrial development bonds in the aggregate amount of $14,910,000 issued by the City of Albany Industrial Development Agency (the "IDA") based on the strength of the credit of Albany Law School and Albany College of Pharmacy. Of that amount, $8,745,000 was attributable to the construction of the building to be leased to Albany Law School and $6,165,000 was attributable to the renovation of the building to

6

be leased to Albany College of Pharmacy. The bondholders are represented by a trustee pursuant to a Trust Indenture dated as of December 1, 1999. The trustee is currently U.S. Bank Trust National Association (the "Bond Trustee"). Pursuant to the Trust Indenture, the Bond Trustee is required to make periodic payments of principal and interest to the bondholders.

Pursuant to an Installment Sale Agreement dated as of December 1, 1999 (Exhibit "D") the Debtor is obligated to make monthly payments to the Bond Trustee which are calculated to be the amounts the Bond Trustee is required to pay the bondholders. The indebtedness owed to the Bond Trustee is secured by security interests in the buildings and other assets.

In furtherance of its corporate purpose, the Debtor entered into two leases dated December 14, 1999 (the "Leases") pursuant to which it leased separate parcels of property, including the buildings to be constructed/renovated thereon, to Albany Law School and Albany College of Pharmacy (Exhibits "E" and "F"). The terms of the Leases are 30 years and the tenants have the option to renew the Leases for two additional 30-year terms. The rent payments for the initial 30-year term are calculated to be the amount necessary for the Debtor to make its monthly installment payments to the Bond Trustee and are sufficient to pay the bonds in full. If the tenants exercise their options to renew the Leases, rent payments for the renewal periods would be paid to the Debtor. By an Assignment dated as of December 1, 1999, the Debtor assigned, *inter alia,* its right to receive the rent payments pursuant to the Leases to the Bond Trustee.

The Leases were authorized and approved by order of a state court judge pursuant to section 511 of the New York Not-For-Profit Corporation Law (Exhibits "H" and "I").[5] Marty Silverman

---

[5]Section 511 of the New York Not-For-Profit Corporation Law provides a procedure whereby a not-for-profit corporation may petition for court approval of a lease or other disposition of its assets upon a showing that the terms of the transaction are fair and reasonable to the corporation and that the purposes of the corporation will be promoted by the transaction. All of the

7

and Alan Goldberg (the Silverman Foundation's representative on the Board) attended the Board meeting held on October 6, 1999, at which the Board unanimously adopted a resolution approving the Leases (Exhibit "G"). Neither Marty Silverman nor Alan Goldberg objected to the terms and conditions of the Leases. Instead, Alan Goldberg voted in favor of the resolution.

## The Silverman Foundation's Lawsuits against The Debtor

As fully discussed in the affidavit of Patrick J. Fitzgerald, Esq., in September 2005, the Silverman Foundation commenced an action in the New York State Supreme Court, New York County against The Debtor claiming that The Debtor owed it approximately $24 million on the promissory notes. That action was commenced by way of a motion for summary judgment in lieu of complaint. The Debtor filed papers in opposition to the motion and the motion was orally argued prior to the filing of the bankruptcy petition. As explained in the Fitzgerald Affidavit, the Debtor raised numerous defenses to the action including, *inter alia*, fraud in the inducement and Statute of Limitations. The Debtor also raised an argument that the obligations were superceded by a payment agreement subsequently entered into by the parties and showed that the interest calculations of the Silverman Foundation were plainly incorrect. The Fitzgerald Affidavit demonstrates that there are numerous issues of fact that would require denial of the motion for summary judgment and that a decision by the state court judge was not imminent at the time the petition was filed.

At the same time that it commenced the action on the notes, the Silverman Foundation commenced a separate action in the New York State Supreme Court, New York County, against the Debtor, Albany Law School, and Albany College of Pharmacy seeking to set aside the Leases as fraudulent conveyances. The Debtor moved in Supreme Court, Albany County, to transfer the venue

---

details of the financing transaction, including the terms of the Leases were set forth in the petition.

of that action to Albany County because New York County is not a proper county of venue. That

motion was pending at the time the petition was filed.

Finally, as explained in detail in the Fitzgerald Affidavit, the law firm of Cooper Erving &

Savage LLP, previously represented the Debtor. The Debtor learned, after the two actions were

commenced by the Silverman Foundation, that, sometime in 2002, Marty Silverman requested that

Cooper Erving turn over to him corporate and legal files which belonged to the Debtor. Mr.

Silverman obviously had no authority to make that request. For reasons unexplained, Cooper Erving

delivered the files to the law firm of Whiteman Osterman & Hannah, LLP, the law firm which was

then representing the Silverman Foundation. Upon discovery of these facts, the Debtor immediately

demanded the return of the files, but Whiteman Osterman has refused to do so unless it receives

permission from Paul Weiss Rifkind Wharton & Garrison LLP, the current attorneys for the

Silverman Foundation. Thus, for the last four years, and during the time that the Silverman

Foundation was claiming that the Debtor owed it $24 million and eventually commenced two

actions against the Debtor, the Silverman Foundation has improperly been in possession of corporate

and legal files belonging to the Debtor. The Debtor was forced to commence an action in state court

to compel the return of its files.

### The Bankruptcy Filing

The Debtor filed its chapter 11 bankruptcy petition on February 13, 2006. All schedules and

other required documents have been filed. The Debtor has made motions, pursuant to 11 U.S.C. §

365, to approve its decision to assume three leases and to convey the property subject to the leases

to the tenants. Those motions are pending before this Court and are incorporated herein.

The Silverman Foundation made the instant motion, pursuant to 11 U.S.C. §1112(b), to

dismiss the petition or, in the alternative, for relief from the automatic stay pursuant to 11 U.S.C.

9

§362(d). The motion must be denied in its entirety for the reasons set forth below.

## DISCUSSION

## I. THERE IS NO BASIS TO DISMISS THE PETITION AS A BAD FAITH FILING.

### Introduction

A bankruptcy case may be dismissed for cause pursuant to 11 U.S.C. § 1112(b) and case law has held that bad faith can constitute cause. See In re HBA East, 87 B.R. 248, 258 (Bankr. E.D.N.Y. 1988). No single fact is determinative, but the court must examine the facts and circumstances of each case in light of several established guidelines. Id. at 259; In re Little Creek Dev. Co., 779 F.2d 1068, 1072 (5th Cir. 1986). The Second Circuit has set forth the factors to be considered on a bad faith dismissal motion:

(1)    the debtor has only one asset;

(2)    the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

(3)    the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

(4)    the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;

(5)    the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

(6)    the debtor has little or no cash flow;

(7)    the debtor can't meet current expenses including the payment of personal property and real estate taxes; and

(8)    the debtor has no employees.

In re C-TC 9th Ave. Partnership, 113 F.3d 1304, 1311 (2d Cir. 1997). One thing that is glaringly apparent from this list of factors, as well as from the other bad faith dismissal cases, is that these

cases involve situations where a debtor files a bankruptcy petition to frustrate a <u>secured</u> creditor from pursuing its state law lien foreclosure rights in a situation where the debtor's only real asset is the secured creditor's collateral and the debtor's primary, if not only, creditor is the secured creditor. In such a case, unsecured creditors are not harmed by the dismissal because the secured creditor will simply pursue its state law foreclosure rights with respect to its collateral, which rights are superior to those of unsecured creditors.

In the instant case, the Silverman Foundation is not a secured creditor pursuing state law rights to foreclose on its collateral. Rather, it is merely an unsecured creditor seeking to pursue the Debtor's unencumbered assets and its right to those assets is not superior to the rights of any of the Debtor's other unsecured creditors. If this case is dismissed, or if the stay is lifted and the Silverman Foundation is permitted to pursue its state court litigation, a "race to the courthouse" will ensue with the other unsecured creditors suing the Debtor to pursue its limited unencumbered assets–a result at odds with the purpose of bankruptcy.

### A. The "Facts" Relied on by the Silverman Foundation are Incorrect.

In an attempt to fit this case within the factors set forth by the Second Circuit in <u>C-TC 9th Ave. Partnership</u>, the Silverman Foundation alleges the following as facts:

(1)    UHA [the Debtor] has only one asset--a piece of real property in Albany;

(2)    UHA has few unsecured creditors other than the Silverman Foundation which, although not a mortgagee, loaned UHA the money to purchase its primary asset;

(3)    The loans which were used to purchase UHA's only asset are the subject of litigation;

(4)    UHA is current on all of its (non-insider at least) obligations and its financial condition is in essence a two-party dispute between it and the Silverman Foundation;

(5)    The eve of judgment timing of UHA's petition certainly evidences an intent to delay or frustrate the legitimate efforts of the Silverman Foundation to enforce its rights;

11

(6)  UHA, having leased a substantial portion of its one asset away at sweetheart rates to insiders, has little or no cash flow; and

(7)  UHA can meet its current expenses – other than its debts to the Silverman Foundation.

(Silverman Foundation's Memo of Law at p. 12). Each of these allegations is either wholly or partially false. Importantly, the Silverman Foundation offers no evidentiary support for its allegations other than an affidavit of its attorney discussing the state court litigation.

The Debtor does not have only one asset, but it owns a number of parcels of real property and has approximately $500,000 in tangible personal property (Schedules A and B of Debtor's Petition).

Next, the Debtor has 18 unsecured creditors including three who are owed, or claim to be owed, in excess of $1 million. Importantly, as conceded by the Silverman Foundation, its alleged claim is unsecured. Moreover, it is not correct that the Silverman Foundation loaned the Debtor the money to purchase its primary asset. As explained above, the Silverman Foundation provided $10.5 million for the purchase of the land, but the Debtor, in reliance on the promises of the Silverman Foundation that the Funds did not have to be repaid, borrowed approximately $15 million to renovate and construct buildings on portions of the real property. Thus, the majority of the funds necessary to purchase the Debtor's assets did not come from the Silverman Foundation.

The Debtor is not current on its non-insider obligations. The Debtor is now in default in its obligations to the Educational Institutions. The Silverman Foundation has offered no analysis or proof that these entities are insiders. In fact, they are not insiders as will be discussed below. Moreover, the Debtor owes more than $8 million to the Bond Trustee. Thus, this is not a two-party dispute but rather a dispute among a number of substantial creditors.

The Silverman Foundation incorrectly states that the filing was on the eve of judgment. As

12

explained in the affidavit of Patrick J. Fitzgerald, Esq., submitted herewith, the state court litigation

was only commenced in September 2005 in the form of motion for summary judgment in lieu of

complaint. N.Y. Civ. Prac. Law and Rules 3213. The motion was argued and there is no indication

of when the state court was prepared to rule on the motion. As set forth in the affidavit of Gerald

Katzman, Esq., contrary to the allegation of the Silverman Foundation, the state court judge's law

clerk made no indication of when the judge would rule on the motion. There are numerous issues

of fact in that litigation which will likely result in denial of the motion for summary judgment.

The Silverman Foundation incorrectly asserts that the Debtor leased a substantial portion of

its "one asset" away at "sweetheart rates" to insiders and has little or no cash flow (Memo of Law

of Silverman Foundation at pp. 2-3). As described in the affidavit of Dr. Jeanne H. Neff, the Debtor

owns numerous parcels of property, six of which are leased to various entities including Albany Law

School, Albany College of Pharmacy, Charitable Leadership Foundation and Renaissance

Corporation of Albany. As explained above, only two of those six leases are challenged by the

Silverman Foundation, a lease to Albany Law School and a lease to Albany College of Pharmacy.

Debtor has substantial other property that is not the subject of these six leases. Although, for the

reasons explained above, it is not necessary to resolve this issue to decide this motion, the Leases

to Albany Law School and Albany College of Pharmacy are not improper. The Leases were

approved by state court pursuant to the New York Not-For-Profit Corporation Law and were entered

into with the consent and approval of the Silverman Foundation. Finally, the Debtor has a positive

cash flow of approximately $200,000 per year as set forth in the affidavit of Dr. Jeanne H. Neff.

Finally, it is not true that the Debtor can meet its current expenses other than its alleged debt

to the Silverman Foundation. As stated above, the Debtor is in default with respect to it obligations

to the Educational Institutions. Moreover, the only source of funds from which the approximately

$15 million owed to the IDA bondholders can be repaid is the lease payments. There is no way that the Debtor, with its current liquid assets, can pay all of those claims.

It is clear from the above that the facts relied on by the Silverman Foundation in support of its motion are incorrect. The Debtor will now demonstrate that, based on the true facts, the circumstances which would support a bad faith dismissal are not present in this case.

### B. The Debtor Did Not File Bankruptcy to Gain a Tactical Advantage in a Two-party Dispute.

(1)    **This Is Not a Two-Party Dispute.**

This case is not simply a two-party dispute. The mere fact that only one creditor commenced a state court action against the Debtor prior to the filing date does not mean this is a two-party dispute.

As stated earlier, the Silverman Foundation provided the $10.5 million needed to purchase the land. Based on the Silverman Foundation's representations that the money did not have to be repaid, the Debtor borrowed approximately $15 million to construct and renovate buildings on two portions of the land which it then leased to Albany Law School and Albany College of Pharmacy. Pursuant to the Installment Sale Agreement, the Debtor is obligated to repay that indebtedness to the Bond Trustee and that indebtedness is secured by security interests in the buildings and other assets. The only source of revenue which the Debtor has to repay the Bond Trustee is the lease payments pursuant to the leases.[6]

---

[6]Albany College of Pharmacy defeased the bonds with respect to its transaction in December 2004 by delivering $6,164,697.45 worth of government securities, which was an amount sufficient to pay all future principal and interest payments to the bondholders, to the Bond Trustee. In essence, it prepaid its rent. As payments to the bondholders come due, the Bond Trustee makes the payments from the securities placed with it by Albany College of Pharmacy. The prepaid rent is the only source of funds to pay the principal and interest owed to the bondholders.

14

As part of the IDA bond transaction, sitework improvements were made to portions of the Debtor's property which were not leased to these two institutions and, as a result, the Debtor is obligated to reimburse those two institutions for these improvements. As of the filing date, the Debtor owed Albany Law School approximately $2.1 million and owed Albany College of Pharmacy approximately $1.5 million (Schedule F to Debtor's Petition). Those obligations are now in default. Moreover, the Debtor also owes almost $50,000 to each of the Educational Institutions as the balance due on loans made to the Debtor and owes approximately $22,000 to the Sage Colleges as a grant reimbursement (Schedule F to Debtor's Petition). The Debtor does not have sufficient unencumbered assets to pay all of its unsecured claims.

The Silverman Foundation not only commenced a state court action to recover on the alleged notes, but it also commenced a state court fraudulent conveyance action to set aside the Leases to Albany Law School and Albany College of Pharmacy. If those Leases are set aside or the Lease streams are interrupted, the bonds would go into default and the Debtor would have no means of repaying the Bond Trustee's secured claim and the prepaid rent paid by Albany College of Pharmacy. Those amounts total almost $15 million.

Throughout its motion papers, the Silverman Foundation states, without any support or analysis, that the Educational Institutions are insiders. The Educational Institutions do not fit within the definition of "insider" set forth in 11 U.S.C. §101(31)(B) because none of the institutions is a director, officer, person in control or general partner of the Debtor or a relative of any such partner. The Educational Institutions also do not come within the definition of "affiliate" set forth in 11 U.S.C. § 101(2) because, as shown by the List of Equity Security Holders filed with Debtor's Petition, the Debtor has no voting securities. The mere fact that part of the corporate purpose of the Debtor is to benefit a number of institutions, including the Educational Institutions, does not

15

automatically make them insiders.

The Silverman Foundation incorrectly states that Albany Law School and Albany College of Pharmacy "historically and continue to this day to dominate and control [the Debtor] - at least five out of the ten members of [the Debtor's] Board are affiliated with those institutions" (Silverman Foundation's Memo of Law at p. 5). The response to question 21(b) of the Statement of Financial Affairs filed by the Debtor demonstrates that there are nine members on the Board. Only two of the nine Board members are associated with Albany Law School and only two are associated with Albany College of Pharmacy. Thus, these two institutions do not dominate or control the Debtor.

In any event, as discussed earlier, Marty Silverman and the Silverman Foundation created and controlled the Debtor in its early years and, until December 2004, always had a representative on the Board. Importantly, Marty Silverman controlled the Board when he negotiated the purchase of the CBA property and the New Scotland Avenue Armory for $10.5 million. Thus, the Silverman Foundation's relationship with the Debtor is a close as, if not closer than, that of the Educational Institutions. This is particularly true because, as discussed, above, the Silverman Foundation is improperly in possession of the Debtor's corporate and legal files.

Clearly, this is not a two-party dispute. The Debtor owes substantial debts to a number of parties and all of these parties are directly affected by the actions taken by the Silverman Foundation. The Debtor does not have sufficient unencumbered assets to pay its unsecured creditors. Without the protection of the Bankruptcy Code, the Debtor cannot possibly satisfy its creditors in an equitable manner.

(2)     **This Case Was Not Filed as a Litigation Tactic to Frustrate the Silverman Foundation's State Court Action to Collect on the Promissory Notes.**

The Silverman Foundation incorrectly claims that the sole purpose of the bankruptcy filing was as a litigation tactic in its state court action to collect on the promissory notes.

Initially, the mere fact that litigation was commenced against the Debtor prior to the petition does not mean that the filing was done as an improper litigation tactic. The fact that a bankruptcy filing was intended in part to gain relief from a state court action does not necessarily constitute bad faith. In re Little Creek Dev. Co., 779 F.2d 1068, 1073 (5th Cir. 1986); see In re Sonnax Ind., 907 F.2d 1280, 1287 (2d Cir. 1990). Virtually every bankruptcy filing is preceded by some sort of state court action(s) commenced against the debtor, usually by a secured creditor to recover its collateral. If creditors are not pursuing as debtor, there is no practical need to seek bankruptcy protection. If the mere fact that state court litigation was commenced prior to a bankruptcy filing means that the filing was a bad faith litigation tactic, then virtually every bankruptcy petition would be subject to dismissal. As observed by the Second Circuit:

> [f]iling a bankruptcy petition with the intent to frustrate creditors does not by itself "establish an absence of intent to seek rehabilitation." Indeed, because a major purpose behind our bankruptcy laws is to afford a debtor some breathing room from creditors, it is almost inevitable that creditors will, in some sense, be "frustrated" when their debtor files a bankruptcy petition. In reality, there is "a considerable gap between delaying creditors, even second creditors, on the eve of foreclosure and the concept of abuse of judicial purpose" (citations omitted).

In re Cohoes Ind. Terminal, 931 F.2d at 228.

The fact that litigation was commenced against the Debtor must be weighed against the other facts and circumstances to determine whether the bankruptcy filing was solely a litigation tactic or, as in the instant case, was done to use the provisions of the Bankruptcy Code to reorganize and provide an equitable means to pay the Debtor's creditors.

17

In virtually all of the cases where a bankruptcy filing was held to be a bad faith litigation tactic, the filing was on the eve of the conclusion or a dispositive stage of litigation commenced by a secured creditor to recover its collateral. As explained in the affidavit of Patrick J. Fitzgerald, Esq., the state court actions commenced by the Silverman Foundation had only fairly recently been commenced and were not even close to resolution.

The Silverman Foundation points to the Rule 2015-6 affidavit which was filed along with the Debtor's petition as evidence that the Debtor filed this bankruptcy case solely as a litigation tactic to frustrate its action on the notes. The Silverman Foundation relies on one phrase of the affidavit which it takes out of context. In that affidavit, the chairperson of the Board states:

> 3.     The Debtor owns real property known as the University Heights Campus located on New Scotland Avenue in Albany, New York. The Debtor leases separate parcels of its real property to, *inter alia,* Albany Law School and Albany College of Pharmacy. An entity known as the Marty and Dorothy Silverman Foundation commenced an action against the Debtor seeking judgment in an amount in excess of the value of the Debtor's assets and, in addition, commenced an action to set aside the leases to Albany Law School and Albany College of Pharmacy. Said actions precipitated this bankruptcy filing.

The Silverman Foundation conveniently ignores the discussion of the IDA bond transaction and the effect of the commencement of the action on the notes and the action to set aside the leases on that transaction and the indebtedness to the other creditors. As explained above, the Debtor's ability to repay the $8,117,901 owed to the Bond Trustee and to avoid any liability with respect to the $6,164,697.45 paid by Albany College of Pharmacy to defease the bonds is dependent on the lease payments from Albany Law School and Albany College of Pharmacy.[7] If the Silverman Foundation

---

[7] As described above, Albany College of Pharmacy essentially prepaid its rent. If its lease was set aside, Albany College of Pharmacy would presumably either assert a claim against the Debtor for the prepaid rent or would assert a claim against the Bond Trustee who would then assert a claim against the Debtor pursuant to the Installment Sale Agreement.

can challenge the Leases (Leases which were approved by a state court judge), a default in the secured IDA bond transaction could occur which would be disastrous to the Debtor. An equitable means of dealing with the claims of all of the unsecured creditors, which can only be accomplished in this Court, would avoid such a result.

The Silverman Foundation also relies on a newspaper article in which one of the attorneys for the Debtor's general counsel was quoted as saying "[t]he [Debtor] is hoping the filing will bring the two sides together to resolve their differences" (Silverman Foundation's Memo of Law at p. 2). The Silverman Foundation incorrectly asserts that this quote was given as the reason for the Debtor's bankruptcy filing. As set forth in the affidavit of M. Cornelia Cahill, Esq., submitted herewith, the quote was not made in response to a question of why the Debtor filed bankruptcy, but in response to a question of how the bankruptcy filing would affect the relationship between the Silverman Foundation and the Debtor. Thus, the quote is not relevant to the issue of why the Debtor filed bankruptcy.

**(3)     This Is a Proper Case for a Bankruptcy Filing.**

The Debtor simply does not have sufficient unencumbered assets to pay the claims of the Educational Institutions, other unsecured creditors and the Silverman Foundation (assuming that it has a claim). It would be financial chaos for the Debtor if all of these unsecured creditors were to be permitted to pursue independent state court law suits against the Debtor. The fact that the Silverman Foundation is the only one of the unsecured creditors to have initiated a law suit prior to the bankruptcy filing does not change the fact that the Debtor is in default to these other creditors and, should this case be dismissed, they would also commence state court actions against the Debtor. It would be a disorderly process if all of these creditors were permitted to pursue independent actions against the Debtor resulting in a race among the creditors to obtain judgments in order to

19

have an advantage in pursuing the Debtor's limited unencumbered assets.  A chapter 11 filing permits an orderly process whereby the Debtor can propose a plan of reorganization which will equitably deal with all of its creditors.

## C. The Debtor Has a Realistic Means of Reorganizing.

The Silverman Foundation states, without any analysis or support, that the Debtor has no realistic means of reorganizing and is merely a shell through which the institutions that make up its Board lease property to themselves (Memo of Law of Silverman Foundation at p. 3). This allegation is patently false.  In fact, the Debtor has a number of parcels of real property which it owns which it can use as part of a plan of reorganization.

The affidavit of Dr. Jeanne H. Neff sets forth, in detail, the substantial operations of the Debtor.  The Debtor owns numerous parcels of property, six of which are leased to various entities including Albany Law School, Albany College of Pharmacy, Charitable Leadership Foundation and Renaissance Corporation of Albany.  The latter two institutions are not on the Board.  The property includes six buildings and a 600-car parking garage.  The Debtor's property includes the former New Scotland Avenue Armory and other parcels of property not currently under lease.  The Debtor provides security and grounds and maintenance services to its tenants and the Educational Institutions and employs 35 people.  The Debtor also provides significant consortial services to the Educational Institutions and the academic community.  As set forth in the Affidavit of Dr. Jeanne H. Neff, the Debtor has a projected annual positive cash flow of approximately $200,000.

The Debtor has already taken concrete steps toward reorganization.  The Debtor has filed three motions with this Court to authorize it to assume the lease with Albany Law School and two leases with Albany College of Pharmacy and to convey the real property pursuant to those leases to those institutions.  As fully explained in those motions, which are incorporated herewith, two of

20

those leases provide that the tenant has a right to purchase the property subject to the lease for the

price of (1) assumption of the existing secured debt and (2) the fair market value of the land. The

third lease is a ground lease and the purchase price is the fair market value of the land. The leases

provide a mechanism for determining fair market value. It is not known at this time what the value

of the land will be found to be, but the Debtor hopes to realize more than $5 million from these

sales. After those motions are granted, the Debtor will receive a substantial amount of cash which

it can use to fund a plan of reorganization.

The Debtor has also received an offer from Albany College of Pharmacy to purchase a parcel

of property subject to another lease for $1,440,000. The Debtor has not responded to that offer

because it needs to have its appraiser determine the value of that parcel of property. If the Debtor

decides to sell this parcel, the sale would generate additional cash for a plan of reorganization.

Based on the above, the Debtor has both substantial assets and a positive cash flow which

it can use to reorganize.

## D. The Relief the Debtor Seeks Is Available in
## Bankruptcy Court and Cannot Be Obtained in State Court.

Contrary to the contention made by the Silverman Foundation, the Debtor cannot obtain

relief in state court. Rather, the relief that the Debtor requires can only be obtained in Bankruptcy

Court.

First, as fully explained above, even assuming that the Silverman Foundation has a valid

claim, the Debtor's unsecured claims exceed the value of its unencumbered assets. Only in

Bankruptcy Court will the Debtor have the remedies to provide it with the necessary breathing room

to produce a plan of reorganization which would equitably deal with unsecured creditors. In state

court, there will simply be a race to the courthouse among the various unsecured creditors to obtain

21

a judgment to pursue the Debtor's limited assets.

Next, even if the Debtor is found to be obligated on the promissory notes, the amount due cannot be determined in state court. As mentioned above, the Debtor leases land to Renaissance Corporation of Albany ("RCA"), a corporation controlled by the Silverman Foundation, pursuant to a ground lease, and RCA constructed a student housing complex on that land (Exhibit "J"). According to the ground lease, the rent to be paid by RCA is the net revenue from the student housing operation. The rent is paid by RCA directly to the Silverman Foundation in reduction of its alleged claim pursuant to a Payment Agreement between the parties dated June 5, 2003 (Exhibit "K"). The Debtor believes, based on occupancy rates and projected budgets, that net revenue was generated for the calendar years 2004 and 2005, but it does not know what, if anything, has been paid by RCA to the Silverman Foundation.[8] This Court has the authority to estimate unliquidated or contingent claims pursuant to 11 U.S.C. § 502(c). See Bittner v. Borne Chem. Co., 691 F.2d 134, 135-36 (3d Cir. 1982); In re CLC of America, 68 B.R. 512, 514 (Bankr. E.D. Mo. 1986). Thus, even if the Silverman Foundation has a claim against the Debtor, it will be necessary to estimate its claim pursuant to 11 U.S.C. § 502(c) because it will be receiving the net revenue from the RCA ground lease for almost 40 years into the future in reduction of such claim. This estimation cannot be performed in state court, but can only be done in this Court. Moreover, if it is determined that the Silverman Foundation does not have a valid claim against the Debtor, the Debtor would commence an adversary proceeding in this Court to compel the return of any rent paid to the Silverman Foundation by RCA.

---

[8]RCA has advised the Debtor that no net revenue was generated for calendar year 2004, but it has refused to provide any supporting documentation. RCA is required, pursuant to the ground lease, to provide the Debtor with financial information documenting net revenue for the calendar year 2005 by March 31, 2006.

Finally, 11 U.S.C. § 510(c) provides a remedy for the equitable subordination of claims that is not available in state court. As discussed above, Marty Silverman personally negotiated the purchase price for the land at a time when he and his representatives were the sole and controlling members of the Board. The Silverman Foundation's representatives advised the Debtor on numerous occasions that the Funds did not have to be repaid. These promises made perfect sense to the parties at the time because the Debtor did not have the assets with which to repay the Funds. In reliance on the promises by the Silverman Foundation's representatives, the Debtor borrowed approximately $15 million to construct and renovate buildings on two parcels of the real property.

Although resolution of this issue is not necessary to the determination of this motion, these facts certainly would form the *prima facie* basis for equitable subordination of any claim which the Silverman Foundation might file in this case and this remedy would not be available in state court.

### E. The Cases Relied on by the Silverman Foundation Are Not on Point.

The Silverman Foundation cherry picks a few facts from a number of cases where bankruptcy petitions were dismissed as bad faith filings but ignores other important facts present in those cases which are not present in the instant case.

Initially, this Court's decision in C-TC 9th Ave. Partnership, 193 B.R 650, affd. 113 F.3d 1304, is no support for the Debtor's motion. In that case, the debtor was a partnership having only one general partner on the petition date. Id. at 652. This Court dismissed the case because, under state law, the fact that the debtor had only one partner meant that the partnership could not reorganize but was required to liquidate its assets. Id. at 654. As a result, the debtor was not a "debtor" as defined in the Bankruptcy Code. This is certainly not the case here. The Debtor is a viable not-for-profit corporation and has the legal right under state law to reorganize.

As an alternative ground, this Court dismissed the bankruptcy case in C-TC 9th Ave.

Partnership as a bad faith filing because it was simply a dispute between the Debtor and its sole secured creditor. Id. at 654. The Debtor had relatively insignificant unsecured creditors and had no employees such that the only possible purpose of the bankruptcy filing was as a litigation tactic in a long standing action commenced by the debtor's sole secured creditor to foreclose on its collateral. Id.

As fully discussed above, Debtor is not in a dispute with its only secured creditor. Rather, the Silverman Foundation, just one of a number of significant unsecured creditors, recently commenced litigation against the Debtor. Moreover, the Silverman Foundation did not commence the litigation to foreclose a security interest, but to obtain a judgment so that it could pursue the Debtor's unencumbered assets, the value of which is less than the amount of the unsecured claims. The Debtor has employees and runs a viable business, notwithstanding the fact that it is a not-for-profit corporation with a specific corporate purpose. The affidavit of Dr. Jeanne H. Neff submitted herewith describes in detail the business of the Debtor which includes not only the leasing of real property, but the provision of security and maintenance services to the Educational Institutions and important consortial services that the Debtor provides to the faculty and students of the Educational Institutions as well as to the public generally.

In Fraternal Composite Servs., 315 B.R. 253 (N.D.N.Y. 2004), Judge Scullin found that the Debtor filed its position solely as a litigation tactic in a state court corporate dissolution action, had no reason to reorganize or rehabilitate and was not experiencing any financial problems. Id. at 255. The debtor had no dispute with any creditors and was not even defending a collection action. Rather, it was merely attempting to avoid a state court dissolution action. Id. at 257. The court held that a petition is filed in good faith

when [the debtor] finds itself in difficult financial situations with a need to

24

financially reorganize and rehabilitate. Although the debtor need not be *in extemis* to file a Chapter 11 petition, it must, at least, be experiencing a level of financial difficulty that, if it did not file at that time, it would likely need to file in the future (citations omitted).

Id.

In this case, the Debtor has substantial assets with which to reorganize and its filing was an attempt to use the bankruptcy process to provide a plan to equitably pay its unsecured creditors. Regardless of whether the Debtor owes $22 million to the Silverman Foundation, it has a need for the reorganization rights of chapter 11 because it simply does not have sufficient unencumbered assets with which to pay its unsecured creditors. Moreover, as described above, the various claims, including the secured claims arising out of the IDA bond transaction and the unsecured claims of the Educational Institutions, are affected by the actions taken by the Silverman Foundation.

The case of The Bridge to Life, Inc., 330 B.R. 351 (Bankr. E.D.N.Y. 2005), also is distinguishable. In that case, the party seeking dismissal had a secured claim against the debtor and had commenced an action against the debtor which had gone to judgment. The debtor appealed and, on the eve of the enforcement of the judgment, filed a bankruptcy petition for the purpose of obtaining a stay without posting an appeal bond. Id. at 356. That bankruptcy petition was dismissed and the debtor filed a second bankruptcy petition on the eve of a sheriff's sale which had been scheduled in the state court action. Id. at 357. Finally, and of vital importance, in Bridge to Life, the debtor had sufficient assets to pay not only the claim of the party moving to dismiss, but the other claims as well. Id. at 357-358.

The instant case is unlike Bridge to Life. It does not involve multiple filings on the eve of the enforcement of a state court judgment. Rather, the litigation was commenced by the Silverman Foundation only several months ago and is a long way from conclusion. Also, it is clear that the

25

Debtor does not have the ability to pay all of its claims. If the Silverman Foundation has a claim of $22 million, its claim, along with the claims of the Educational Institutions and all of the other unsecured claims exceed the value of the Debtor's unencumbered assets.

The case of In Re Macinnis, 235 B.R. 255 (S.D.N.Y. 1998), is equally inapplicable to the instant case. There, the debtor had one principal asset, which consisted of funds which had been attached by the moving party pre-petition such that the moving party had a security interest in the funds. Id. The Debtor had few unsecured creditors whose claims were de minimis in relation to the claim of the moving party, it had no available sources of income to sustain a plan or reorganization and the debtor failed to file a plan of reorganization in the year since the filing date. Id.

In the instant case, the Debtor has a number of assets, including real and personal property, none of which are subject to any lien of the Silverman Foundation. The claims of the other creditors are not de minimis when compared to the alleged claim of the Silverman Foundation. The Silverman Foundation claims to be owed $22 million although, as stated above, only $10.5 million was actually provided by the Silverman Foundation to the Debtor. Albany Law School is owed $2.1 million and Albany College of Pharmacy is owed $1.5 million. The Bond Trustee is owed a secured indebtedness in an amount in excess of $8 million and the Albany College of Pharmacy has prepaid rent in an amount in excess of $6 million. Thus, the various claims against the Debtor other than the Silverman Foundation's claim are certainly not de minimis. Additionally, the Debtor has sources of income to sustain a plan of reorganization. The Debtor has a positive annual cash flow of $200,000 and it has already made motions to this Court to assume three leases and convey real property which could possibly net $5 million or more to the Debtor. Moreover, the Debtor has substantiated assets other than these three parcels and all of the assets are available for use in a plan of reorganization. Finally, unlike the situation in Macinnis, there has been no delay in filing a plan

26

of reorganization. This bankruptcy case was only filed on February 13, 2006, and the Debtor is already moving toward a plan of reorganization by making the motions to assume leases and convey parcels of real property.

The case of In re Northtown Realty Co., 215 B.R. 906 (Bankr. E.D.N.Y. 1998), also is not on point. That case represented a serial chapter 11 filing which was filed for the purpose of avoiding the provisions of a prior confirmed and consummated Chapter 11 plan. The serial filing was done to delay or frustrate a secured creditor's foreclosure action. The debtor had only one asset, and that asset was fully secured by the secured creditor. The claims of the unsecured or subordinate creditors were dwarfed by the secured creditor's claim with the result that there were no unencumbered assets for unsecured creditors. Importantly, the debtor did not have a real possibility of reorganizing.

In the instant case, the Silverman Foundation does not have a secured claim on any of the Debtor's assets, but is simply one of a number of unsecured claimants. Although the Debtor has substantial unencumbered assets with which to reorganize, the unsecured claims exceed the value of the Debtor's unencumbered assets.

Finally, the case of Schur Management Company, 323 B.R. 123 (Bankr. S.D.N.Y. 2005), is nothing like the instant case. There, the debtor filed bankruptcy solely to avoid a state court action and virtually admitted as much by consenting to relief from the automatic stay so that the state court action could continue. The court found that the debtor had no need for the protections of the Bankruptcy Code.

The instant case is very different in that the Debtor requires the remedies contained in the Bankruptcy Code, including the ability to propose a plan of reorganization to equitably deal with all of its unsecured creditors with its limited unencumbered assets, the need to estimate any claim of the Silverman Foundation and the need to equitably subordinate any such claim.

27

In conclusion, the Silverman Foundation has selected one or two facts from the above discussed cases to support its contention that this case was filed in bad faith. When all of the facts and circumstances of these cases are considered and compared with the facts of the instant case, it is apparent that the criteria required for a showing of bad faith are not present in this case.

## II. THE SILVERMAN FOUNDATION IS NOT ENTITLED TO RELIEF FROM THE AUTOMATIC STAY.

As an alternative form of relief, the Silverman Foundation seeks relief from the automatic stay pursuant to 11 U.S.C. § 362(d) so that it can continue the state court litigation which it commenced to recover on the alleged promissory notes.

The grounds for relief from the automatic stay are set forth in 11 U.S.C. § 362(d) and, because the Silverman Foundation is not a secured creditor seeking to recover its collateral, the only applicable provision is subparagraph 1 of that provision which provides for relief from the stay "for cause."

The Silverman Foundation bears the burden making an initial showing of cause. In Re Sonnax Ind., 907 F.2d 1280, 1285 (2d Cir. 1990). Only if the Silverman Foundation makes an initial showing of cause does the burden shift to the Debtor. Id. If the Silverman Foundation fails to make an initial showing of cause, the motion must be denied without any showing by the Debtor that it is entitled to the continued protection of the automatic stay. Id. In the instant case, it is clear that the Silverman Foundation cannot make an initial showing of cause.

It is established in this Circuit that the factors to be considered in determining whether the stay should be modified to permit litigation in another forum to continue are:

(1)    whether relief would result in a partial or complete resolution of the issues;

(2)    lack of any connection with or interference with the bankruptcy case;

28

(3)    whether the other proceeding involves the debtor as a fiduciary;

(4)    whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

(5)    whether the debtor's insurer has assumed full responsibility for defending it;

(6)    whether the action primarily involves third parties;

(7)    whether the litigation in another forum would prejudice the interests of other creditors;

(8)    whether the judgment claim arising from the other action is subject to equitable subordination;

(9)    whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10)   the interests of judicial economy and the expeditious and economical resolution of litigation;

(11)   whether the parties are ready for trial in the other proceeding; and

(12)   the impact of the stay on the parties and the balancing of harms.

In re Mazzeo, 167 F.3d 139, 143 (2d Cir. 1999); In re Sonnax Ind., 907 F.2d at 1286; In Deep, 279 B.R. 653, 657 (Bankr. N.D.N.Y. 2002).

The Silverman Foundation relies on eight of the above twelve factors and argues that they militate in favor of granting the stay. As will be discussed below, these factors do not militate in favor of modifying the stay. Moreover, one of the four factors which the Silverman Foundation claims is not relevant is very relevant and militates against permitting the state court litigation to continue.

**(1)    Relief Would Not Result in a Partial or Complete Resolution of the Issues.**

The Silverman Foundation incorrectly contends that the issue of whether the Debtor is indebted to the Silverman Foundation is the "single key factor in determining whether [the Debtor]

can continue or not" (Silverman Foundation's Memo of Law at p 16).   In fact, the only issue that

could be resolved in the state court action would be whether the Debtor is obligated to the Silverman

Foundation on the promissory notes.  This would not resolve the matter because, even if the Debtor

is indebted to the Silverman Foundation, it would still be necessary to compute the value of its claim

and that could not be done in the state court.   As explained earlier, pursuant to the Payment

Agreement, RCA is required to pay the net operating profit from the student housing project to the

Silverman Foundation in reduction of its alleged claim against the Debtor (Exhibit "K").   Although

the state court could presumably deduct any amounts already paid by RCA to the Silverman

Foundation in determining the amount of a judgment, it does not have the authority to estimate the

value of the future payments that this Court does pursuant to 11 U.S.C. § 502(c).

Moreover, regardless of whether the Debtor owes the Silverman Foundation nothing, the

$10.5 million principal or $22 million as claimed by the Silverman Foundation, the Debtor still

needs to reorganize because it does not have sufficient unencumbered assets to pay all of its

creditors.  Only this Court can be the forum for these reorganization issues.

Next, as described above, even if the Silverman Foundation is owed anything, its claim is

subject to equitable subordination pursuant to 11 U.S.C. § 510(c), a remedy which is only available

in this Court.

Finally, the Silverman Foundation ignores the fact that it commenced a second state court

action to set aside the Leases.  Although the Debtor believes, for the reasons briefly discussed above,

that this action is frivolous, if the Leases were set aside or the Lease streams were interrupted, the

entire IDA bond transaction involving almost $15 million would be jeopardized.  Resolution of the

issue of whether the Debtor is obligated on the promissory notes will not resolve this issue.

It is apparent that the issue of whether the Debtor is obligated on the promissory notes, the

30

only issue that could be resolved in the state court action, is but one of many issues in this case and

those other issues can only be resolved in this Court. It makes no sense to permit one isolated issue

to be litigated in another forum when that issue can be litigated in this Court and so many other

issues <u>must</u> be resolved by this Court.

(2)    **The State Court Action Is Connected With and Will Interfere
       With This Bankruptcy Case.**

The action on the notes most certainly is connected with the bankruptcy case. As has been

observed,

> 'Congress contemplated that relief from the stay may be appropriate to permit state
> court adjudication of such matters as divorce, child custody and probate proceedings
> where such matters bear no relation to the bankruptcy case.' However, unlike those
> issues, <u>the allowance of a claim is a fundamental bankruptcy issue</u> (emphasis
> supplied).

<u>In re CLC of America</u>, 68 B.R. at 514. As in <u>CLC of America</u>, the allowance of the Silverman

Foundation's alleged claim against the Debtor is a fundamental bankruptcy issue.

Clearly, the continuation of the state court action will interfere with this bankruptcy case.

For the reasons set forth above, the Debtor has a need to reorganize and it needs to focus its entire

attention on developing and effectuating a plan of reorganization which will equitably deal with all

of its creditors. The Debtor will not be able to concentrate its efforts on that goal if it is forced to

litigate a case in New York City. This is particularly true in the instant case because, contrary to the

allegations of the Silverman Foundation, the state court litigation is in its infancy. This action was

commenced in September 2005 in the form of a motion for summary judgment in lieu of complaint.

That motion has been argued and, as described in the affidavit of Patrick J. Fitzgerald, Esq., the

existence of numerous issues of fact would likely result in the denial of that motion. The Silverman

Foundation simply states, as a matter of fact and without any support, that the state court litigation

31

is almost concluded. To the contrary, that litigation will require extensive discovery and a trial before it could be concluded. As a result, if the stay is granted, the Debtor's time and attention will be diverted by a protracted litigation in New York City.

(3)    **The Interests of Judicial Economy and the Expeditious and Economical Resolution of Litigation Will Not Be Served By Permitting the State Court Litigation To Continue.**

The Silverman Foundation attempts to argue that the state court litigation is on the eve of judgment. In fact, that action was only recently begun and the only thing that has occurred is that a motion for summary judgment in lieu of complaint has been argued. A decision on this motion was not imminent as of the filing date as set forth in the affidavits of Patrick J. Fitzgerald, Esq., and Gerald Katzman, Esq. Because of the existence of substantial triable issues of fact, it is likely that, if the stay was lifted, that motion would be denied. The result would be substantial discovery and, eventually, a trial. Moreover, whether that motion was granted or denied, the aggrieved party would likely appeal and the state court appellate process would take a considerable amount of time. Accordingly, this matter will not be expeditiously resolved in Supreme Court, New York County. On the other hand, the procedure for the allowance of claims is a routine matter in bankruptcy court which can be handled expeditiously. See In re CLC of America, 68 B.R. at 515.

(4)    **A Specialized Tribunal With the Necessary Expertise Has Not Been Established to Hear the Cause of Action.**

This factor certainly does not militate a factor of granting a stay. This factor only weighs in favor of lifting the stay where the other forum is particularly suited to bear the matter because it is a specialized tribunal. See In re Deep, 279 B.R. at 658; In re CLC of America, 68 B.R. at 514. The instant case simply involves an action on notes. New York Supreme Court has no particular expertise to handle this sort of litigation. Indeed, bankruptcy courts deal with issues concerning

32

enforceability of notes on a daily basis. See In re Deep, 279 B.R. at 658; In re CLC of America, 68 B.R. at 514. There is no particular knowledge or expertise that the state court judge has which is necessary to the resolution of this issue.

(5)    **The Litigation In State Court Would Prejudice the Interests of Other Creditors.**

Clearly, other creditors would be prejudiced by the continuation of the Silverman Foundation's litigation. As stated throughout this memorandum of law, it must be kept in mind that the Silverman Foundation does not have a secured claim. It stands in no better position than any of the other unsecured creditors and the Debtor does not have sufficient unencumbered assets to pay all of its unsecured claims (even assuming that the Silverman Foundation has a valid claim). That being the case, the Silverman Foundation obviously would be in a better position than other unsecured creditors if it was permitted to win the "race to the courthouse" by obtaining a judgment before other unsecured creditors could obtain judgments. Regardless of whether the Silverman Foundation can execute on a possible judgment, it would still be in a preferred position because it would have a judgment. Indeed, if the Silverman Foundation is permitted to continue the state court litigation, other unsecured creditors could argue that the stay should be modified to permit them to commence state court actions. This would result in numerous unsecured creditors pursuing the Debtor's limited unencumbered assets–a situation contrary to the purpose of the Bankruptcy Code.

Additionally, it has been held that the added costs caused by a debtor's principals traveling to another forum to litigate prejudices other unsecured creditors because these costs constitute an administrative expense ahead of unsecured claims. In re CLC of America, 68 B.R. at 514.

(6)    **The Silverman Foundation's Success In the State Court Action
       Would Result in a Judicial Lien Avoidable By the Debtor.**

The Silverman Foundation states that the successful prosecution of its case will not result

33

in an avoidable judicial lien. In fact, under New York law, the entry of a judgment constitutes a lien on all real property of the debtor located in the county of entry and a judgment creditor can transcript a judgment into any county in the State of New York where the debtor owns real property. N.Y. Civil Prac. Law and Rules 5018(a), 5203(a). As a result, should the Silverman Foundation obtain a judgment and transcript that judgment into Albany County, it would have a lien on the Debtor's real property which the Debtor would seek to avoid in this Court.

Apart from a lien being created, the Silverman Foundation would still be in a preferred position over other unsecured creditors because, as discussed in the preceding point, it would have a judgment and be in a position to execute on that judgment while other unsecured creditors would not be in such a position. This circumstance would be an incentive for the "race to the courthouse" discussed earlier in this memorandum of law.

(7)    **The Parties Are Not Ready For Trial In the State Court Action.**

The Silverman Foundation continues to attempt to convince this Court that the state court action is to be resolved imminently and it states that it is a "summary proceeding." In fact, it is not a summary proceeding. Rather, the Silverman Foundation simply moved for summary judgment and it asks this Court to simply accept its conclusory allegations that (1) there are no triable issues of fact, and (2) it will win the motion. That is far from certain. Indeed, because there are numerous triable issues of fact in that action, it is highly unlikely that summary judgment would be granted.

(8)    **The Impact Of the Stay On the Parties and the Balancing of Harms Militates In Favor Of Denial Of The Motion.**

The Debtor has discussed above the impact of lifting the stay on the parties, including the fact that the Debtor would be harmed because its attention would be diverted to defending an action in New York City when its efforts should be focused on reorganizing. It should be kept in mind in

34

this regard that the members of the Debtor's Board are volunteers.

On the other hand, there is absolutely no harm to the Silverman Foundation if the state court action does not proceed. Even if the issue is resolved in state court, the Silverman Foundation still will not be paid any money unless and until the Debtor obtains confirmation of a plan of reorganization. Moreover, as discussed above, even if the Silverman Foundation is found to have a claim, the issues of claim estimation and equitable subordination would still need to be resolved by this Court. Thus, to litigate of the case in New York City, at the considerable time, expense, and effort of the parties, will not cause the Silverman Foundation to receive payment on its claim any earlier than it would if the litigation is not permitted to continue. Indeed, this Court could resolve an objection to claim much more expeditiously than a state court sitting in New York City.

**(9)    Any Judgment Obtained By the Silverman Foundation Would Be Subject To Equitable Subordination.**

The Silverman Foundation relies on eight of the twelve factors but ignores one factor which strongly militates against granting the relief sought, i.e. whether any judgment it might obtain would be subject to an equitable subordination. Where the claim of the party seeking stay relief may be subject to equitable subordination, the stay should not be lifted because it would be wasteful for the debtor to incur additional costs litigating the claim outside the bankruptcy forum. See In re CLC of America, 68 B.R. at 514. The Silverman Foundation incorrectly states that any judgment it might obtain in state court would not be subject to equitable subordination.

As discussed above, Marty Silverman negotiated the purchase price for the real property at a time when he directly controlled the Debtor and he made representations to the Educational Institutions that they would not have to repay the $10.5 million as an inducement to those institutions borrowing $15 million in industrial revenue bonds to build buildings on the land. These

35

facts would support equitable subordination of any claim that the Silverman Foundation may have. While it is not necessary to litigation the equitable subordination issue on this motion, the fact that the Silverman Foundation's claim may well be subject to equitable subordination militates against modifying the stay.

It is clear from the above discussion that an analysis of the factors to be considered on a motion for relief from the stay to permit litigation to continue in another forum weighs heavily in favor of denial of the relief sought the Silverman Foundation.

<b><u>CONCLUSION</u></b>

The factors necessary for dismissal of a bankruptcy case as a bad faith filing are not present in this case. Additionally, there is no basis to award the Silverman Foundation relief from the automatic stay. Accordingly, it is respectfully submitted that the motion of the Silverman Foundation should be denied in its entirety.

Dated: Albany, New York
March 24, 2006

Respectfully,

McNAMEE, LOCHNER, TITUS & WILLIAMS, P.C.
*Attorneys for Debtor*

By: _____
Francis J. Smith
677 Broadway
Albany, New York 12207

GIRVIN & FERLAZZO, P.C.
*Special Counsel to the Debtor*
20 Corporate Woods Boulevard
Albany, New York 12211
Patrick J. Fitzgerald, Esq. of Counsel
M. Cornelia Cahill, Esq. of Counsel